```
                 UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT CHARLESTON
```

LORI D. JUSTICE, individually,
and on behalf of a class of
similarly situated persons,

       Plaintiff,

v.                              Civil Action No. 2:17-cv-01997

CNA NATIONAL WARRANTY
CORPORATION,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is defendant CNA National Warranty Corporation's motion to dismiss.

### I. Factual and Procedural Background

Plaintiff Lori D. Justice purchased an automobile from Thornhill Ford Lincoln in Logan, West Virginia on August 13, 2014. Compl. ¶ 4. "As part of the purchase transaction, [Justice] also purchased so-called 'Gap Insurance' from Thornhill, through Defendant CNA National Warranty Corporation. [Justice] paid Nine Hundred 00/100 Dollars ($900.00) to CNA National Warranty Corporation for the insurance coverage." Compl. at ¶ 5. CNA National Warranty Corporation (hereinafter "CNA Warranty") "was not licensed to sell insurance at any time

by the West Virginia Offices of the Insurance Commissioner."[1] Id. at ¶ 7. The Gap Insurance agreement provided that "in the event of the Total Loss of the Vehicle . . . Dealer/Creditor will waive [purchaser's] liability for the difference between the Net Finance Contract Payoff as of the Date of Loss and the Actual Cash Value[.]" Id. at ¶ 6. Justice does not claim that any incident occurred resulting in the total loss of her vehicle, or that she has otherwise attempted to obtain benefits from her Gap Insurance.

On February 9, 2017, Justice filed a class action in the Circuit Court of Logan County, West Virginia individually and on behalf of "[a]ll West Virginia consumers who purchased 'gap insurance' offered by CNA National Warranty Corporation and were charged a premium." Id. at ¶ 8. Justice claims that CNA Warranty violated West Virginia Code § 33-3-1 by selling Gap Insurance without a license, and that this unlawful sale

---

[1] CNA Warranty refutes the fact that it sells insurance, and claims that its "GAP waivers" do not constitute insurance products. (see ECF # 14 at 5.) The Supreme Court of Appeals of West Virginia has clarified that GAP waiver programs are in fact insurance. See State ex rel. Safe-Guard Prod. Int'l, LLC v. Thompson, 235 W. Va. 197, Syl. Pt. 2 (2015) ("a contract that requires a third party to indemnify a lender, as a result of a specified event that causes the lender not to be repaid by a borrower . . . is an insurance contract that is governed by the insurance laws of the State of West Virginia.").

violates the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46a-2-127, barring unfair or deceptive debt collection practices.  Id. §§ 1, 13, 14.  CNA Warranty removed the case to federal court on March 24, 2017, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453. On May 1, 2017, CNA Warranty filed the motion to dismiss, claiming that the alleged conduct is not covered by the WVCCPA.  This case has been stayed pending a ruling on a similar issue in another case in this court that has recently been resolved.  Hinkle v. Matthews, civil action number 2:15-cv-13856.

## II.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

Evaluation of a motion to dismiss is underlain by two principles.  First, the court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56).  Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as

3

true.  Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

III. Discussion

CNA Warranty seeks dismissal of Justice's sole count in her complaint, that CNA Warranty violated the debt collector provisions of the WVCCPA, W. Va. Code § 46A-2-127, when it allegedly sold insurance without a license.[2] Section 46A-2-217 provides: "No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." CNA Warranty argues that it is not a "debt collector" within the protections of Article 2 of the WVCCPA.  (ECF #14 at 3).

In West Virginia, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Hammons v. W. Va. Office of Ins. Comm'r, 235 W.

---

[2] Although the initial complaint and CNA Warranty's Motion to Dismiss contained discussion of Article 6 of the West Virginia Code, W. Va. Code §§ 46A-6-102,104 and 106, Justice's reply brief clarifies that any reference to Article 6 was inadvertent, and she only seeks recovery under Article 2.  (See ECF # 16 at 2, n. 1).

Va. 577, 584 (2015) (quoting Syl. Pt. 1, <u>Smith v. State Workmen's Comp. Comm'r</u>, 159 W. Va. 108 (1975)). This analysis begins with the plain language of the statute. <u>Ancient Energy, Ltd. v. Ferguson</u>, 806 S.E.2d 154, 157 (W. Va. 2017). If the plain language is unambiguous, no further interpretation is necessary. <u>Id.</u> The court's analysis is further guided by the Supreme Court of Appeals of West Virginia's instruction that the WVCCPA be liberally construed in accordance with its remedial nature. See <u>State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.</u>, 194 W. Va. 770, 777 (1995).

With these considerations in mind, determining whether CNA Warranty is a "debt collector" first requires careful review of the following statutory definitions:

> "Debt collector" is defined as "any person or organization engaging directly or indirectly in debt collection." <u>Id.</u> § 46A-2-122(d) (effective 1996).
>
> "Debt collection" is "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." <u>Id.</u> § 46A-2-122(c).
>
> A "claim" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." <u>Id.</u> § 46A-2-122(b).
>
> "Services" are defined to "include[]: (a) Work, labor and other personal services; (b) privileges with respect to transportation, use of vehicles, hotel and

> restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like; and (c) insurance." Id. § 46A-1-102(47).
>
> And a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." Id. § 46A-2-122(a).

For reasons stated below, the court finds that the plain language of the statute is unambiguous and that, even liberally construed, CNA Warranty is not a "debt collector" within the protections of the WVCCPA's debt collection provisions.

As an initial matter, section 46A-2-127 plainly overcomes the WVCCPA's exception of insurance sales because a "claim," defined specifically for the debt collection provisions, expressly encompasses insurance. See id. § 46A-2-122(b). Thus, reading the above definitions together, the inquiry becomes whether CNA Warranty engaged in "debt collection" when it sold Gap Insurance to Justice; that is, whether CNA Warranty collected a "claim" from a "consumer." Because a "claim" must be "of a consumer," id., the inquiry collapses into the following issue: whether CNA Warranty's sale of Gap Insurance involved or gave rise to a "claim."

A "claim" is, in turn, essentially defined as an "obligation" to pay a "debt" "arising out of" a "transaction."[3] None of those four terms is statutorily defined. The Supreme Court of Appeals instructs that "[e]ach word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 4, <u>Osborne v. United States</u>, 211 W. Va. 667 (2002).

A superficial reading of the four undefined terms suggests that CNA Warranty's sale of Gap Insurance is outside the scope of the statute. The sale was a point of sale or point of purchase exchange, meaning Justice made a one-time, upfront payment in exchange for the Gap Insurance. No other payment was required. A simultaneous exchange of this character does not invoke an impression of debt collection in the normal sense.

Nevertheless, Justice argues that a "claim" encompasses a point of sale exchange. Justice analogizes this scenario to that in <u>Bass v. Stolper, Koritzinsky, Brewster, and Neider, S.C.</u>, 111 F.3d 1322 (7th Cir. 1997), a case decided under the federal Fair Debt Collection Practices Act ("FDCPA"),

---

[3] A "claim" must also be of a "natural person," <u>id.</u> §§ 46A-2-122(a) and (b), which is not an issue here.

15 U.S.C. §§ 1692 et seq., where a dishonored check arising from a supermarket transaction was held to be a "debt" under the statute. The court stated: "As long as the transaction creates an obligation to pay, a debt is created. We harbor no doubt that a check evidences the drawer's obligation to pay for the purchases made with the check, and should the check be dishonored, the payment obligation remains." Bass, 111 F.3d at 1325. However, those facts are not on point here, where payment was made simultaneously with the receipt of the Gap Insurance. A more relevant illustration was considered by this court in its decision in Hinkle v. Matthews, wherein the plaintiff offered the following scenario as an example of debt creation:

> Suppose, for argument's sake, a person makes a point of sale purchase at any every day retailer. After the sales person rings up the purchase, she "solicit[s]" a "claim" by telling the consumer what amount is "due," and the consumer pays for the purchase.

In this illustration, however, no debt is created. If the consumer decides at the point of sale not to make the purchase and leaves the goods on the counter, no debt is owed.

Justice nonetheless looks for support in the debt collection provisions' repeated used of the word "any," see W. Va. Code Ann. § 46A-2-122, and the decision of the Supreme Court of Appeals "that the word 'any,' when used in a statute, should be construed to mean, in a word, any." (ECF #16 at 4 (quoting

Thomas v. Firestone Tire & Rubber Co., 164 W. Va. 763, 769 (1980)).) The statutory definition of both the terms "debt collection" and "claim" include the word "any" as set forth in section 46A-2-122. Justice draws the conclusion "that the Legislature's use of the word 'any' requires application of the WVCCPA to <u>all</u> obligations arising from a transaction, whether that obligation is paid for at the point of sale or at a later time." (<u>Id.</u> (emphasis in original)).

CNA Warranty counters that, if Justice's argument were accepted by the court, this "would be an absurd result" where "every single business that operates in West Virginia will be deemed a debt collector pursuant to the WVCCPA." (ECF #23 at 6; see also ECF # 16 at 5.) Instead, CNA Warranty urges that the "correct interpretation is that without a deferred payment, balance due, delinquent payment, or continuing obligation of some sort there is no 'claim' under the WVCCPA." (ECF # 23 at 6.)

To begin, the court returns to the fundamental definition of "claim" under the WVCCPA's debt collection provisions: an "obligation" to pay a "debt" "arising out of" a "transaction." <u>See</u> W. Va. Code Ann. §§ 46A-2-122(a), (b). In legal parlance, a "debt" - the term of most import here in parsing a debt collection statute - is a "[l]iability on a

claim; a specific sum of money due by agreement or otherwise." Debt, Black's Law Dictionary (10th ed. 2014). The ordinary meaning of "debt" is "something owed; obligation," or "a state of being under obligation to pay or repay someone or something in return for something received; a state of owing." Debt, Merriam-Webster, https://www.merriamwebster.com/dictionary/debt. These definitions indicate that the plain meaning of "debt" contemplates money due to another as a result of a prior agreement or exchange. Thus, payment in a point of sale exchange, as is the case here, is not payment of a "debt" or a "claim" inasmuch as payment is simply required to complete the exchange, if the payor chooses to do so.

The remaining three terms support that conclusion. "Obligation" is vaguely defined and generally means a duty to act. See Obligation, Black's Law Dictionary; Obligation, Merriam-Webster. Indeed, the legal definition acknowledges that "[t]he word has many wide and varied meanings. It may refer to anything that a person is bound to do or forbear from doing." Obligation, Black's Law Dictionary. "Transaction" and "arise," however, provide more clarity. "Transaction" is defined as "[t]he act or an instance of conducting business or other dealings; esp[ecially], the formation, performance, or discharge of a contract." Transaction, Black's Law Dictionary; see also

Transaction, Merriam-Webster (meaning "something transacted; especially an exchange or transfer of goods, services, or funds"). And "arise" means "[t]o result (from)." Arise, Black's Law Dictionary; see also Arise, Merriam-Webster (meaning "to originate from a source"). Thus, a debt "arising out of" a "transaction" indicates that a "claim" follows the formation of a contract.

Reading the four above definitions together, a "claim" is fairly and most logically read as a duty to pay money resulting from a prior contract or agreement. Correspondingly, a point of sale exchange does not give rise to a "claim" where payment is simultaneously made.

The court's conclusion is illustrated by basic contract principles. In West Virginia, "[t]he elements of a contract are an offer and an acceptance supported by consideration." Dan Ryan Builders, Inc. v. Nelson, 230 W. Va. 281, 287 (2012) (citing, inter alia, Syl. Pt. 1, First Nat. Bank of Gallipolis v. Marietta Mfg. Co., 151 W. Va. 636 (1967)). Performance under a contract is unenforceable until those elements are met. See Syl. Pt. 3, id. (quoting Syl. Pt. 5, Virginian Export Coal Co. v. Rowland Land Co., 100 W. Va. 559 (1926)).

Appropriating the example of a point of sale exchange involving the "every day retailer" described above, the consumer's payment constitutes his acceptance of the retailer's offer. Only then is there a contract upon which the retailer could collect on a subsequent duty to pay, if any such duty exists. Under a point of sale contract, however, there is no additional duty to pay and, as a consequence, no "claim."

Turning to the circumstances of the present case, it is a general tenet of contract law that "[t]he offeror is the master of his offer." Restatement (Second) of Contracts § 30 cmt. a (Am. Law Inst. 1981). As such, the offeror may invite or even require a particular mode of acceptance, and further may impose the terms of acceptance within the offer. See id. § 30 cmts. a-c. Here, by making the $900 payment, Justice accepted the contract for Gap Insurance. Justice's agreement with CNA Warranty was thus a point of sale exchange. Accordingly, because she had no duty to pay CNA Warranty any money as a result of a prior purchase of Gap Insurance, CNA Warranty's sale of Gap Insurance is not a "claim" under the WVCCPA's debt collection provisions.

Justice seeks support in case law parsing the WVCCPA and the federal FDCPA. Before turning to those cases, the court notes that none of the cases cited by Justice and CNA Warranty

address the point of sale issue here, and the court's own thorough search did not yield any on-point opinions. This is unsurprising with respect to the FDCPA because, as Justice points out, "the FDCPA, unlike the [WVCCPA], does not apply to original creditors, but only to entities that are acting to collect debts on behalf of others or who have purchased defaulted debt." (ECF #16 at 5 n. 3.) As for West Virginia and the remaining jurisdictions with similar debt collection provisions, the point of sale issue has not been addressed.[4]

As for the FDCPA, in Pollice v. National Tax Funding, 225 F.3d 379 (3rd Cir. 2000), the Third Circuit rejected the deferral-of-payment standard stated in Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3d Cir. 1987). The court in Pollice held that "the plain meaning of section 1692a(5) indicates that a 'debt' is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family or household

---

[4] A California state court addressed a similar issue in Gouskos v. Aptos Village Garage, 94 Cal. Rptr. 2d 558 (Cal. Ct. App. 2001). California's state debt collection statute applies only to a "consumer credit transaction," which requires, inter alia, that "property, services or money is acquired on credit." Id. at 561 (emphasis in original and other emphasis omitted). The WVCCPA does not impose a similar "acquired on credit" requirement before a transaction falls within the purview of the debt collection provisions.

13

purposes." 225 F.3d at 401. Arguably, the word "whenever" could be read as intending to encompass point of sale exchanges.

Justice contends that the Supreme Court of Appeals has indicated support for her position. In Dan's Carworld, LLC v. Serian, the Supreme Court of Appeals held that "when a consumer purchases a motor vehicle from a dealership, and the dealership accepts the trade in of another motor vehicle as payment, or partial payment, of the purchase price of the vehicle being purchased, subsequent efforts by the dealership to collect from the consumer any amounts due the dealership by virtue of the dealership's payment of the loan secured by the trade-in vehicle must comply with the [WVCCPA]." Syl. Pt. 8, 223 W. Va. 478 (2009). Thus, Justice argues, the efforts to collect the debt do not have to "occur subsequently to the creation of the obligation, but [rather, the court] recognized that a claim is created upon purchase." (ECF #16 at 7, n. 5). And so it did - by virtue of the prior agreement for the purchase of a vehicle. See Dan's Carworld, Syl. Pt. 8, 223 W. Va. 478.

Additionally, in Fleet v. Webber Springs Owners Ass'n, Inc., the Supreme Court of Appeals decided, in accordance with the federal circuit courts reading of the FDCPA, that certain homeowners association assessments are "claims" under the WVCCPA. Syl. Pt. 2, 235 W. Va. 184 (2015); see also id. 193-94.

Thus homeowner association fees, which Justice notes "constituted the attempted collection of a [WV]CCPA 'claim'" (ECF #16 at 7, n. 4), could arguably be construed as a point of sale exchange.

These cases do not conflict with the court's decision here. In Pollice, the Third Circuit acknowledged that the obligations at issue resulted from a prior agreement: homeowners agreed to make periodic payments in the future in exchange for ongoing water and sewer service. See 225 F.3d at 400. The decision in Fleet was made along similar lines, wherein the assessments "arose in connection with the purchase of the homes themselves, even if the timing and amount of particular assessments was yet to be determined." 235 W. Va. at 193 (quoting Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477, 479 (7th Cir. 1997)).[5] These cases all present situations

---

[5] Justice also looks for support in two additional decisions of the Supreme Court of Appeals: Dunlap v. Friedman's, Inc., 213 W. Va. 394 (2003), and State ex rel. U-Haul Co. v. Zakaib, 232 W. Va. 432 (2013). Dunlap pertained to a statute of limitations issue, 213 W. Va. at 396, and Zakaib addressed the enforceability of an arbitration agreement, 232 W. Va. at 438. Justice nonetheless insists that the underlying facts involved WVCCPA "claims" similar to a point of sale exchange, thus ostensibly indicating the Supreme Court of Appeals' tacit acknowledgment that point of sale exchanges are "claims" under the WVCCPA. (See ECF #16 at 7 and 7 n. 5.) The court disagrees. Simply stated, neither decision discusses the WVCCPA in any detail. Consequently, Dunlap and Zakaib are not relevant here.

wherein there was an additional obligation to pay resulting from a prior contract; here, there was no such additional obligation.

Accordingly, Justice's claim under West Virginia Code section 46A-2-127, her sole claim, is dismissed.

V. Conclusion

Accordingly, for the foregoing reasons, it is ORDERED that CNA Warranty's motion to dismiss be, and hereby is, granted.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

Enter: September 27, 2018

John T. Copenhaver, Jr.
United States District Judge